UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
MICHAEL RAPILLO,

     *Plaintiff*,

  -against-

CITIMORTGAGE, INC., AND FEDERAL
HOME LOAN MORTGAGE CORP. A/K/A
FREDDIE MAC,

     *Defendants*.
---------------------------------X

**MEMORANDUM & ORDER**

15-CV-5976(KAM)(RML)

**MATSUMOTO, United States District Judge:**

       Plaintiff Michael Rapillo ("plaintiff") commenced the
instant action on September 28, 2015 by filing, together with
certain other documents, a complaint ("Compl." or the
"complaint," ECF No. 1-1) in the Supreme Court of New York,
Queens County (the "State Court") against defendants
CitiMortgage, Inc. ("CMI") and Federal Home Loan Mortgage Corp.
a/k/a Freddie Mac ("Freddie Mac," and together with CMI,
"defendants") seeking a declaratory judgment invalidating and
vacating (i) the non-judicial foreclosure sale and subsequent
assignment of certain cooperative shares and the related
proprietary lease, and (ii) a related notice of termination and
termination deadline. Plaintiff's complaint also seeks an order
directing defendants to provide plaintiff with a payoff
statement pursuant to New York Real Property Law § 274-a. On
October 16, 2015, defendants removed the instant action to this

court pursuant to 28 U.S.C. § 1441 *et seq.* (*See generally* Notice of Removal, ECF No. 1.)

Presently before the court is defendants' unopposed motion for summary judgment as to all of plaintiff's claims. In support of their motion, defendants have submitted a statement of undisputed material facts with supporting documents pursuant to Local Rule 56.1 ("SMF," ECF No. 24-1), a memorandum of law in support of their motion ("Mem." or the "memorandum," ECF No. 27), and the declarations of Ms. Lara M. Freymuth ("Freymuth Decl.," ECF No. 25) and Scott B. Group, Esq. ("Group Decl.," ECF No. 26).[1] For the reasons set forth below, the court grants defendants' motion for summary judgment in its entirety.

## JURISDICTION

The court has jurisdiction over the instant action pursuant to 12 U.S.C. § 1452(f), which provides, in relevant part, that "all civil actions to which [Freddie Mac] is a party shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such actions, without regard to amount or value" at issue in the action.

---

[1] Because certain exhibits to the Freymuth and Group declarations include multiple documents, or are otherwise not consecutively paginated, where the court cites specific page numbers in exhibits to the Freymuth and Group declarations, the numbers refer to the page numbers assigned by ECF, *i.e.* including the cover pages, and not to the page numbers contained in individual documents within the exhibits.

## I.   Factual Background

Because the instant action involves a cooperative apartment and related property rights, the court briefly explains cooperative apartment ownership, the nature of which other courts have characterized as "*sui generis*." *E.g. In re Lefrak*, 215 B.R. 930, 934 (Bankr. S.D.N.Y. 1998), *aff'd*, 227 B.R. 222 (S.D.N.Y. 1998); *State Tax Comm'n v. Shor*, 371 N.E.2d 523, 524 (N.Y. 1977). The owner of a cooperative apartment does not own the apartment itself. Instead, "[t]he owner holds shares in the corporation that owns the apartment building, and his share ownership entitles him to a proprietary lease." *Id.* (citations omitted). "The shares and lease are inseparable; the transfer of one without the other would be futile, and therefore ineffective." *Id.* (citations omitted); *see also United States v. 110-118 Riverside Tenants Corp.*, 886 F.2d 514, 517 (2d Cir. 1989) ("Unlike the common understanding of the term 'stock,' the shares of 'stock' in the Apartment Corporation are not freely transferable, and they have no value independent of the Lease for the Apartment.").

With this background in mind, the following facts are set forth in defendants' Local Rule 56.1 statement of unopposed and undisputed material facts, and as more fully discussed below, are taken as true so long as "the citation to evidence in

the record supports the assertion." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003)).

On April 1, 2008, plaintiff borrowed $35,000 from defendant CMI and executed a Co-op Fixed Rate Note (the "Note") evidencing the debt.[2]  (SMF at ¶ 1; Freymuth Decl. Ex. A (attaching Note).)  On the same date, plaintiff and his now-deceased mother, Teresa Rapillo ("Ms. Rapillo"), executed a security agreement pursuant to which they pledged as collateral for the debt their 290 shares of cooperative stock (the "Shares") in the Linwood Village, Sec. E Cooperative Corp., and a proprietary lease (the "Lease") on the property commonly known as 89-35 115th Avenue, Unit 1F, Howard Beach, New York, 11414 (the "Unit").[3]  (SMF at ¶ 2-3; Freymuth Decl. Ex. B (attaching, *inter alia*, security agreement and Lease); *see also* Compl. at ¶ 7 (identifying Ms. Rapillo as plaintiff's mother).)  Defendant CMI recorded its interest in the Shares and Lease by filing a UCC-1 financing statement and cooperative addendum (the "UCC-1") with the Office of the City Register of the City of New York on

---

[2]    The complaint alleges that the initial loan was in the amount of $30,000, (Compl. at ¶ 8), but the Note is attached to the Freymuth declaration and the face of the Note states that it is in the amount of $35,000.  (*See* Freymuth Decl. Ex. A.)
[3]    Plaintiff and his mother owned the Shares as joint tenants with a right of survivorship.  (SMF at ¶ 3; *see* Freymuth Decl. Ex. B at 8 of 16 (attaching share certificate).)

February 19, 2008.  (SMF at ¶ 4 (citing Freymuth Decl. at ¶ 7);

Freymuth Decl. Ex. C (attaching UCC-1).)[4]

Defendants have presented evidence that plaintiff

failed to make payments in accordance with the terms of the

Note.  (SMF at ¶ 6 (citing Freymuth Decl. at ¶ 11 and Group

Decl. at ¶ 6, Ex. M).)  Defendants cite to the declaration of

CMI's business manager, Ms. Freymuth, attesting that "CMI

retained the law firm of Rosicki Rosicki & Associates, P.C., as

counsel to manage the non-judicial sale process for the [Shares]

for Michael and Teresa Rapillo's defaulted loan."  (Freymuth

Decl. at ¶ 11.)  Thus, the non-judicial foreclosure was

commenced to pay the amounts due under the Note, even though the

Freymuth declaration does not specifically state that plaintiff

failed to make payments under the Note, or state the dates and

amount of the purportedly missed payments.  In further support

of defendants' assertion that plaintiff missed payments,

defendants also cite an affidavit plaintiff filed in state

court, which implicitly concedes that plaintiff failed to make

payments under the terms of the Note.  (*See* Plaintiff's

Affidavit in Support, Group Decl. Ex. M, at ¶ 2 ("I am in the

---

[4]     Defendants' statement of material facts states that the UCC-1 was filed
on February 20, 2008 and that the addendum was filed the previous day,
February 19, 2008.  (SMF at ¶¶ 4-5.)  However, a review of the relevant
document indicates that the UCC-1 and addendum were filed together on
February 19, 2008.  (*See* Freymuth Decl. Ex. C at 1 (indicating that document
was filed "02-19-2008," stating document type is "INITIAL COOP UCC 1," and
noting "COOPERATIVE WITH ADDENDUM")).)

process of obtaining all of the funds necessary to pay off whatever was *allegedly* owed." (emphasis added)) and ¶ 6 ("It appears that [CMI] *claimed* that I did not make certain payments on that principal." (emphasis added)).)

On December 11, 2014, defendant CMI took the first steps necessary to foreclose on the Shares and Lease by mailing plaintiff and Ms. Rapillo certain notices required by New York U.C.C. § 9-611(f). (SMF at ¶¶ 6-7; Freymuth Decl. at ¶ 9 and Ex. E (explaining and attaching computerized correspondence log); Freymuth Decl. at ¶ 8 and Ex. D (identifying and attaching copies of notices sent to plaintiff and Ms. Rapillo).) On May 19, 2015, CMI's attorneys advanced the foreclosure process by mailing notices of sale of the Shares and Lease to, among others, plaintiff and Ms. Rapillo at the Unit. (SMF at ¶ 8; Group Decl. Ex. I (attaching notice and affidavit of mailing).)

On June 12, 2015, an auctioneer held a public auction sale of the Shares and Lease on the steps of the State Court, and CMI submitted the winning bid in the amount of $42,810.68.[5] (SMF at ¶ 9; Certificate of Sale and Fact, Freymuth Decl. Ex. G, at 2 (setting forth winning bidder and bid amount).) CMI

---

[5]     The Certificate of Sale and Fact states that the sale was to the "Secured Party," and therefore "no money exchanged hands except for the auctioneer's fee and expenses of the sale. (*See* Freymuth Decl. Ex. G (attaching Certificate of Sale and Fact).) It therefore appears that CMI's bid was a credit bid, *i.e.*, that CMI used the value of plaintiff's secured debt to CMI, rather than cash, as currency for its bid.

assigned its bid to Freddie Mac on July 7, 2015, (SMF at ¶ 11; Assignment of Bid, Freymuth Decl. Ex. H, at 2), and on August 31, 2015, Freddie Mac's counsel executed and served a 30-day notice of termination (the "30-Day Notice") on plaintiff, Ms. Rapillo, and any unknown parties in possession of the Unit. (SMF at ¶ 12; Group Decl. Ex. K (attaching 30-Day Notice and affidavits of service).)[6]

## II.  Procedural History

Plaintiff commenced the instant action by filing a summons and complaint in the State Court on September 28, 2015, and defendants removed the action to this court on October 16, 2015.  (*See* Notice of Removal; *see also generally* Compl.)

The complaint asserts three "causes of action," the first two of which seek various forms of declaratory relief, and the third seeks injunctive relief.  Notably, nothing in the complaint indicates that plaintiff seeks money damages.  In its first "cause of action," the complaint asserts that CMI's non-judicial foreclosure sale of the Shares and Lease was invalid because CMI's UCC-1 expired five years after the date it was filed, *i.e.*, on February 19, 2013.  (Compl. at ¶¶ 17-20.)

---

[6]    Defendants' statement of material facts states that CMI's counsel executed and served the notice of termination, but a review of the underlying documentation indicates that Rosicki Rosicki & Associates, which had represented CMI in managing the sale process, (Freymuth Decl. at ¶ 11), served the notice on behalf of Freddie Mac, not on behalf of CMI.  (*See* Group Decl. Ex. K.)

Therefore, plaintiff contends that CMI lacked any security interest in the Shares and Lease at the time it provided notice of, and conducted, its sale, and the sale is invalid. (*Id.* at ¶¶ 20-23.) Additionally, plaintiff asserts that the sale was invalid because defendant CMI did not serve plaintiff and his mother with the required notices, including pursuant to N.Y. U.C.C. 611(f), (*Id.* at ¶¶ 24-27, 30-31), and because the sale of the Shares and Lease was not commercially reasonable as evidenced by the sale price. (*Id.* at ¶¶ 28-29.) Based on the foregoing, the first "cause of action" requests declaratory judgment that (1) CMI's sale of the Shares and Lease was invalid and is vacated, (2) CMI's assignment of the Shares and Lease to Freddie Mac is invalid, and (3) plaintiff remains the owner of the Shares, and the lessee under the Lease. (*Id.* at ¶ 32.)

The complaint's second "cause of action" asserts that the 30-Day Notice is invalid because it is signed by an "alleged" agent of Freddie Mac, without proper indication of actual agency, and not an agent of the lessor, specifically Lindenwood Village Sec. E Cooperative Corp. (*Id.* at ¶¶ 33-35.) The complaint further asserts that the 30-Day Notice lacked complete attachments, was not served in compliance with the law or underlying contracts, and was not served on Ms. Rapillo's heirs at law. (*Id.* at ¶¶ 36-39.) Additionally, the complaint asserts that CMI's rights, if any, were not properly assigned to

Freddie Mac. (Compl. at ¶ 40.) Based on these assertions, the complaint's second "cause of action" seeks declaratory judgment that the 30-Day Notice is "invalid in its entirety" and the associated termination deadline is tolled and vacated. (*Id.* at ¶ 41.)

The complaint's third, and final, "cause of action" seeks an order directing defendants to provide plaintiff with a payoff statement pursuant to section 274-a of the New York Real Property Law. (*Id.* at ¶ 42.)

Plaintiff was initially represented, but his counsel withdrew in June of 2016, (*see* Docket Order Granting Motion to Withdraw, dated June 27, 2016), and plaintiff has not obtained new counsel.

On February 23, 2017, the court granted defendants leave to file the instant motion. At the pre-motion conference, the court advised plaintiff of the requirements for summary judgment motion practice, including the importance of a Local Rule 56.1 counterstatement to assert any disputed material facts, and of submitting admissible evidence in support of any fact asserted. (Minute Entry for February 23, 2017 Pre-Motion Conference.) The court further advised plaintiff to seek the assistance of counsel in responding to defendants' motion for summary judgment. (*Id.*) Defendants served the motion on plaintiff, and plaintiff did not respond. (*See* May 23, 2017

Letter to the Court, ECF No. 28.)  On May 23, 2017, the court,

*sua sponte*, granted plaintiff an extension of time until June

14, 2017 to respond to the instant motion and warned plaintiff

that if he failed to file an opposition by that date, the court

would consider defendants' motion unopposed, but plaintiff did

not respond.[7]  (*See* June 30, 2017 Letter to the Court, ECF No.

29.)  Accordingly, on July 6, 2017, the court deemed the motion

submitted and unopposed.  Defendants served a copy of the

court's July 6, 2017 order deeming the instant motion submitted

and unopposed on plaintiff.  (Affidavit of Service, ECF No. 30.)

## LEGAL STANDARD

### I.   Motion for Summary Judgment

#### A.    Generally

Federal Rule of Civil Procedure ("Rule") 56 provides

that "[t]he court shall grant summary judgment if the movant

shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."  Fed

R. Civ. P. 56(a).

#### B.    Unopposed Motion for Summary Judgment

Rule 56 "does not embrace default judgment principles"

and a lack of opposition does not relieve the court of its "duty

---

[7]     Specifically, the court entered a docket order granting plaintiff
additional time to serve and file his opposition to defendants' motion for
summary judgment.  The docket order stated that the court would provide
plaintiff with "a copy of [the docket] order and the complete docket" by mail
at his address of record.

to decide whether the movant is entitled to judgment as a matter of law." *Vermont Teddy Bear*, 373 F.3d at 242.  In keeping with these principles, a motion for summary judgment should not be "granted automatically" because "there has been no response to [it]." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Instead, the court may properly grant an unopposed motion for summary judgment only where "the facts as to which there is no genuine dispute 'show that the moving party is entitled to a judgment as a matter of law.'"  *Id.* (quoting Fed. R. Civ. P. 56(c)).

Accordingly, the court must "(1) determine what material facts, if any, are disputed in the record presented on the motion, and (2) assure itself that, based on those undisputed material facts, the law indeed warrants judgment for the moving party."  *Merrill Lynch Commercial Fin. Corp. v. RCI Jewelry Corp.*, No. 09-CV-4017(DRH)(ARL), 2011 WL 710454, at *4 (E.D.N.Y. Feb. 22, 2011) (citing *Champion*, 76 F.3d at 486 and *Allen v. Comprehensive Analytical Grp., Inc.*, 140 F. Supp. 2d 229, 232 (N.D.N.Y. 2001)).  When the court evaluates which material facts are undisputed, a party's failure to respond to a motion for summary judgment "may allow the district court to accept the movant's factual assertions as true . . . [but] the moving party must still establish that the undisputed facts entitle him to 'a judgment as a matter of law,'" and the court

"must be satisfied that the citation to evidence in the record supports the assertion." *Vermont Teddy Bear*, 373 F.3d at 244 (citations omitted); *see also Giannullo*, 322 F.3d at 143 n.5 (stating that where a statement of material fact in a Local Rule 56.1 statement rests on a "wholly unsupportive record citation," the nonmoving party's failure to controvert the statement cannot "absolve[] the district court of even checking whether the citation supports the assertion.").

### C. Special Considerations for *Pro Se* Litigants

As discussed above, plaintiff has proceeded *pro se* in this action since June of 2016. When a party seeks summary judgment against a *pro se* adversary, as defendant seeks here, Local Rule 56.2 requires that the moving party file and serve on the *pro se* party a specific "Notice to *Pro Se* Litigant Who Opposes a Motion for Summary Judgment." That notice, in relevant part, advises the *pro se* party of the nature of a Rule 56 motion and his burden in responding to it. *See generally* Local Rule 56.2; *see also Vital v. Interfaith Med. Ctr.*, 168 F.3d 615 (2d Cir. 1999); *Sawyer v. Am. Fed'n of Gov't Employees, AFL-CIO*, 180 F.3d 31, 34 (2d Cir. 1999).

Defendants here include a compliant Local Rule 56.2 notice to plaintiff as Exhibit 2 to their Notice of Motion. (*See* Notice of Motion, ECF No. 24, at Ex. 2, ECF No. 24-2.) Although defendants have not filed a separate affidavit of

service with respect to their moving papers, their Notice of Motion, which is annexed to defendants' submissions, indicates that service of all of defendants' motion papers, including the Notice of Motion, the Local Rule 56.1 and 56.2 statements, their memorandum of law, and their exhibits, was made on plaintiff by regular and certified mail. (Notice of Motion at 2.)

Additionally, the minute entry for the pre-motion conference at which the court granted defendants leave to file the instant motion states that "[t]he court advised plaintiff of the requirements for summary judgment motion practice, including the importance of a Rule 56.1 counterstatement to assert any material facts that are in dispute, and submitting admissible evidence in support of any fact asserted." (Minute Entry for Proceedings Held on February 23, 2017.) Defendants served this minute entry on plaintiff on February 23, 2017. (Affidavit of Service, ECF No. 23.)

Finally, following receipt of defendants' initial request to deem the instant motion unopposed and fully submitted, the court entered and served on plaintiff a docket order that, in relevant part, reminded the plaintiff of his obligation to serve defendants with his opposition to the instant motion and advised plaintiff that failure to file his opposition by June 14, 2017 would result in the court deeming

the motion unopposed and potentially in this action's dismissal. (*See* Docket Order dated May 23, 2017.)

In light of the foregoing, the court concludes, based on the record before it, that plaintiff has failed to oppose defendants' motion for summary judgment after being given adequate notice of the instant motion, its importance, and his burden in responding to it.

## DISCUSSION

### I.    Declaratory Judgment

Plaintiff seeks declaratory relief and, as such, this action implicates the Declaratory Judgment Act, codified at 28 U.S.C. § 2201.  The Declaratory Judgment Act authorizes the court to "declare the rights and other legal relations of any interested party . . . whether or not further relief is or could be sought" where there is an "actual controversy" within the court's jurisdiction.  28 U.S.C. § 2201(a).

Declaratory judgment is a form of relief, not a substantive cause of action.  *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp*, 108 F.3d 17, 21 (2d Cir. 1997) ("The DJA is procedural in nature, and merely offers an *additional remedy* to litigants.")  Accordingly, "a court may only enter a declaratory judgment in favor of a party who has a substantive claim of right to such relief."  *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993).  Further, the

14

declaratory judgment remedy is discretionary even if a party has a substantive claim of right to the relief he or she seeks. *See In re Orion Pictures Corp.*, 4 F.3d 1095, 1100 (2d Cir. 1993) ("A district court has broad discretion to decide whether to render a declaratory judgment."). In the Second Circuit, in deciding whether declaratory judgment is appropriate, the court must consider "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005) (citation omitted); *see also Cont'l Cas. Co. v. Coastal Sav. Bank*, 977 F.2d 734, 737 (2d Cir. 1992).[8]

Therefore, defendants will prevail on their motion for summary judgment if the undisputed material facts compel a conclusion that, as a matter of law, plaintiff is not entitled to the declaratory and other relief he seeks. Additionally,

---

[8]    The Second Circuit's 1992 decision in *Continental Casualty*, citing a prior decision, states that a court "must" entertain a declaratory judgment action when the judgment would (i) serve a useful purpose in clarifying or settling the issues involved, or (ii) finalize the controversy and offer relief from uncertainty. 977 F.2d at 737 (citing *Broadview Chem. Corp. v. Loctite Corp.*, 417 F.2d 998, 1001 (2d Cir. 1969)). Subsequent decisions from the Supreme Court and the Second Circuit indicate that these two factors are not mandatory. *See ICBC Standard Sec., Inc. v. Luzuriaga*, 217 F. Supp. 3d 733, 738 n.1 (S.D.N.Y. 2016) (citations omitted) (discussing cases decided after *Continental Casualty*). Instead, these factors "guide the exercise of discretion in Declaratory Judgment Act cases." *Id.* (quoting *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 105 (2d Cir. 2012)).

even if defendants' motion for summary judgment is not granted as a matter of law, the court may, in an exercise of its discretion, find that declaratory judgment as to plaintiff's first and second "causes of action" would not be appropriate in this case.

## II. Plaintiff's Causes of Action

### A. Validity of the Sale and Transfer of Shares and Lease

Plaintiff contends the sale and subsequent transfer of the Shares and Lease were improper under the New York U.C.C. and seeks declaratory judgment invalidating the sale and the transfer. (Compl. at ¶¶ 17-32.)

Whether and to what extent plaintiff has a substantive claim of right to the declaratory relief he seeks depends on the law governing plaintiff's rights. With respect to plaintiff's first "cause of action," which seeks declaratory judgment regarding the sale and transfer of the Shares and Lease, the court applies the law governing security interests in cooperative apartment interests.

When a debtor pledges cooperative shares and a corresponding proprietary lease as security for a debt, article 9 of the New York Uniform Commercial Code governs enforcement of the security interest and the New York Real Property Actions and Proceedings Law is inapplicable. *Fundex Capital Corp. v. Reichard*, 568 N.Y.S.2d 794, 795 (N.Y. App. Div. 1991) (citation

16

omitted); *see also* N.Y. U.C.C. § 9-109(a)(7) (stating that
article 9 applies to "a security interest in a cooperative
interest"); *Bell v. Alden Owners, Inc.*, 199 B.R. 451, 464
(S.D.N.Y. 1996) ("Because shares in a cooperative are personal,
not real property, security interests in the Shares are governed
by UCC Articles 8 and 9." (citations omitted)); *cf. also Shor*,
371 N.E.2d at 524 ("[w]here priorities of judgment creditors are
involved, the stock certificate and lease involved in the
typical co-operative apartment transaction fit better, legally
and pragmatically, . . . into the statutory framework governing
personal property."). Article 9 therefore defines the parties'
respective rights and remedies with respect CMI's security
interest in the Shares and Lease.

### 1. Declaratory Judgment as to Validity of Sale

As an initial matter, the court rejects plaintiff's
argument that defendant CMI did not hold a valid, perfected
security interest in the Shares and Lease when it foreclosed on
and sold them. Plaintiff's argument that the UCC-1 financing
statement evidencing CMI's security interest in the Shares and
Lease expired as of February 19, 2013 is based on his contention
that section 9-515(a) of the New York U.C.C., which limits
financing statements' effectiveness to five years, governs the
UCC-1 here. (Compl. at ¶¶ 18-19.) Plaintiff, however,
overlooks section 9-515(h) of the New York U.C.C., which

provides that "[a]n initial financing statement covering a cooperative interest is effective for a period of 50 years after the date of the filing of the initial financing statement if a cooperative addendum is filed simultaneously with the initial financing statement or is filed before the financing statement lapses."

The undisputed record before the court indicates that CMI recorded its interest in the Shares and Lease by filing the UCC-1 with the Office of the City Register of the City of New York on February 19, 2008. (SMF at ¶ 4 (citing Freymuth Decl. at ¶ 7); Freymuth Decl. Ex. C (attaching UCC-1).) Further, the "Recording and Instrument Cover Page" of the UCC-1 clearly indicates that the document is an "INITIAL COOP UCC1" and "COOPERATIVE WITH ADDENDUM," (Freymuth Decl. Ex. C at 2-3 (page repeated)), and the attached documents consist of a "UCC Financing Statement," (*id.* at 5), and a "UCC Financing Statement Cooperative Addendum." (*Id.* at 6.) Defendants therefore complied with the provisions of New York U.C.C. § 9-515(h), the UCC-1 covering the Shares and Lease was valid at all times relevant to this action, and as such, the Shares and Lease were CMI's collateral.

New York U.C.C. § 9-610 authorizes a secured party to dispose of its collateral, including by selling it, upon a default by the debtor. Various provisions within article 9

govern such dispositions.  For instance, section 9-610(b) requires that "[e]very aspect of a disposition of collateral . . . be commercially reasonable," and other sections speak to the secured party's notification obligations to the debtor and to parties with an interest in the collateral.  *See* N.Y. U.C.C. §§ 9-611, 9-612, 9-613.  Two sections of the New York U.C.C. are particularly relevant to the remedies that may be available to a debtor where a secured party does not comply with the New York U.C.C.'s provisions regarding the disposition of collateral.

The first of these, section 9-617, provides, in relevant part, that a secured party's disposition of collateral after a default "transfers to a transferee for value all of the debtor's rights in the collateral."  N.Y. U.C.C. § 9-617(a)(1).[9] CMI gave value in exchange for the Shares and Lease at the foreclosure sale, and as such acceded to all of plaintiff's rights in the Shares and Lease under New York U.C.C. § 9-617(a)(1).  (*See* Certificate of Sale and Fact, Freymuth Decl. Ex. G at 2 (stating that the Shares and Lease were "sold unto [CMI] for the sum of $42,810.68").)

Additionally, if a transferee takes in good faith, that is, with "honesty in fact in the transaction or conduct concerned," N.Y. U.C.C. § 1-201(20), the transferee will take

---

[9]     Where, as here, the collateral is disposed of through a public sale, the transferee may be the secured party itself.  *See* N.Y. U.C.C. § 9-610(c)(1).

free and clear of any of the debtor's rights in the collateral, regardless of whether the secured party complied with article 9 of the New York U.C.C. or the requirements of any judicial proceeding in disposing of the collateral. N.Y. U.C.C. § 9-617(b). The New York U.C.C. therefore expressly provides that a disposition of collateral that does not comply with the requirements of article 9 is nevertheless valid so long as the transferee takes in a manner that is "honest in fact." However, if the transferee does not take in good faith – with good faith defined as "honesty in fact" – the transferee takes subject to the debtor's rights in the collateral. N.Y. U.C.C. § 9-617(c)(1).

Here, the complaint alleges, with varying degrees of specificity, various instances of defendants' failure to comply with article 9, but does not allege in form or in substance that any of defendants' conduct was not honest in fact. (*See* Compl. at ¶¶ 13-32.) Therefore, even if plaintiff is correct that CMI failed to comply with the provisions of article 9, he has not alleged that CMI acted other than in good faith in its capacity as transferee of the Shares and Lease at the foreclosure sale. *See* N.Y. U.C.C. § 1-201(20) (defining good faith as "honesty in fact in the transaction or conduct concerned"). Furthermore, even if CMI had taken in bad faith, the record does not enable the court to determine what rights plaintiff would have had in

the collateral at the time of the foreclosure sale.  As such,
plaintiff has not alleged any basis on which the court could
conclude that he retains rights in the Shares and Lease under
New York U.C.C. § 9-617.

The second New York U.C.C. section relevant to
plaintiff's potential remedies is section 9-625, which governs
remedies when a secured party does not proceed in accordance
with article 9's provisions, and applies regardless of the
transferee's good faith, *i.e.*, its "honesty in fact."  Section
9-625 provides for injunctive and monetary relief.  With respect
to injunctive relief, "[i]f it is established that a secured
party is not proceeding in accordance with [article 9], a court
may order or restrain . . . disposition of collateral on
appropriate terms and conditions."  N.Y. U.C.C. § 9-625(a).  As
to money damages, New York U.C.C. § 9-625(c)(1) provides that a
debtor may recover, subject to certain limitations, "damages in
the amount of any loss caused by a failure to comply with
[article 9]," N.Y. U.C.C. § 9-625(b), as well as statutory
damages.  N.Y. U.C.C. § 9-625(e)-(f).

By its plain terms, in order for an aggrieved party to
obtain injunctive relief, section 9-625(a) requires that the
secured party presently be proceeding in a manner that is not in
accordance with article 9.  Here, however, plaintiff alleges
that defendants undertook actions that did not comply with

article 9 several months prior to the initiation of this action. Section 9-625(a) is therefore inapplicable, and injunctive relief is not available to plaintiff. Plaintiff's only recourse, therefore, is to seek money damages under section 9-625(b) of the New York U.C.C. *See In re Enron Corp.*, No. 01-BK-16034(AJG), 2005 WL 3873890, at *10 (Bankr. S.D.N.Y. June 16, 2005) ("Under a plain meaning of the statute, [New York U.C.C. § 9-625(a)] would be applicable in circumstances where the secured party is *proceeding* to dispose of the collateral and not in a situation where the disposition of the collateral has already occurred. Therefore, since the [collateral sale] has already occurred, [the aggrieved party's] remedy, if it were shown that [the secured party] did not comply with the requisite provisions of [a]rticle 9, would be an action for damages under section 9–625(b) of the U.C.C. and not an invalidation of the sale." (emphasis in original)), and at *10 n.14 (discussing language similar to N.Y. U.C.C. § 9-625(a) in prior codification of N.Y. U.C.C. and noting that official comment to prior statutory language stated that "[t]his remedy will be of particular importance when it is applied prospectively before the unreasonable disposition has been concluded." (citations omitted).)

Although plaintiff styles his "causes of action" as seeking declaratory relief, his first "cause of action" appears

22

ultimately aimed at obtaining injunctive relief with respect to the foreclosure sale of the Shares and Lease.  In particular, plaintiff seeks declaratory judgment that CMI's foreclosure sale of the Shares and Lease "is invalid and is vacated in its entirety," and "that plaintiff remains the owner of the [S]hares . . . and remains the lessee [under the Lease]."  (Compl. at ¶ 32.)  Thus, plaintiff's request for declaratory relief is clearly aimed at providing a basis for restoring plaintiff's possession of the Shares and status as lessee under the Lease. Additionally, nothing in the complaint suggests that plaintiff seeks money damages or even that plaintiff is inclined to seek money damages based on the alleged liability of defendants.

As the court has discussed, however, injunctive relief restoring plaintiff's possession of the Shares and status as lessee under the Lease is not available to plaintiff as a matter of law.  Additionally, the only practical effect of a declaratory judgment that plaintiff owns the Shares and remains the lessee under the Lease could be to serve as a basis for injunctive relief that is unavailable as a matter of law. Therefore, the court will grant defendants' motion for summary judgment on plaintiff's claims to the extent the claims seek injunctive relief restoring plaintiff to possession of the Shares and reinstating him as lessee under the Lease. Furthermore, because plaintiff may not obtain injunctive relief

with respect to the foreclosure sale of the Shares and Lease, a declaratory judgment that the sale is "invalid and is vacated in its entirety," and that "plaintiff remains the owner of the [S]hares . . . and [L]ease," would serve no "useful purpose." *Duane Reade*, 411 F.3d at 389. The court therefore grants defendants' motion for summary judgment as to plaintiff's declaratory judgment claim that the sale is invalid and should be vacated and that plaintiff remains the owner of the Shares and Lease.

The court emphasizes that its construction of plaintiff's first "cause of action" as one ultimately aimed at obtaining injunctive relief is critical to the court's disposition of plaintiff's claim for a declaratory judgment that the foreclosure sale is "invalid and is vacated in its entirety." The court does not decide whether CMI's disposition of the Shares and Lease actually complied with the requirements of article 9 of the New York U.C.C., because even if the foreclosure sale did not comply with article 9's requirements, plaintiff's only recourse would be to money damages under New York U.C.C. § 9-625(b), which plaintiff does not seek here. Therefore, nothing in this order should be construed as a

conclusion that the foreclosure sale was actually effected in a

commercially reasonable manner.[10]

### 2. Declaratory Judgment as to Transfer of Rights

Plaintiff's first "cause of action" also seeks

declaratory judgment that "to the degree [CMI] transferred any

rights to Freddie Mac, that assignment is invalid," (Compl. at ¶

32), but plaintiff does not expressly assert any basis for such

a declaration, and has presented no evidence suggesting the

invalidity of the assignment.

As discussed above, CMI's security interest in the

Shares and Lease was valid at all relevant times. Further, the

complaint does not allege that CMI acted other than with

"honesty in fact," and as such does not allege a lack of good

faith on the part of CMI as transferee of the collateral at the

---

[10] It appears to the court that there may be genuine issues of material fact as to whether the foreclosure sale of the Shares and Lease was commercially reasonable. For instance, New York U.C.C. § 9-613(c) provides that the contents of a notification of disposition are sufficient as a matter of law if the notification includes all information set forth in New York U.C.C. § 9-613(a)(1)-(5). The Notice of Sale attached as Exhibit I to the Group declaration, however, does not, in form or substance, "state[] that the debtor is entitled to an accounting of the unpaid indebtedness and . . . the charge, if any, for an accounting," as set forth in New York U.C.C. § 9-613(a)(4). "Whether the contents of a notification that lacks any of the information specified in [section 9-613(a)] are nevertheless sufficient is a question of fact." N.Y. U.C.C. § 9-613(b). Additionally, the weight of authority indicates that, at least in the article 9 context, "the primary focus of commercial reasonableness [of a sale of collateral] is not the proceeds received from the sale but rather the procedures employed for the sale." *In re Zsa Zsa Ltd.*, 352 F. Supp. 665, 671 (S.D.N.Y. 1972), *aff'd* 475 F.2d 1393 (2d Cir. 1973). The record here establishes that the sale took place at a public auction but is otherwise silent as to the procedures employed for the sale. Regardless of the foregoing, the court need not, and does not, actually determine whether genuine issues of material fact exist as to the commercial reasonableness of the foreclosure sale.

foreclosure sale. *See* N.Y. U.C.C. § 1-201(20) (defining "good faith"). Consequently, when the foreclosure sale closed, all of plaintiff's rights in the Shares and Lease were extinguished because section 9-617 of the New York U.C.C. provides that upon a secured party's disposition of collateral, a transferee that acts in good faith takes "free and clear" of any interest the debtor may have in the collateral even if the secured party failed to comply with the requirements of article 9. *See* N.Y. U.C.C. § 9-617(a)-(b).

Furthermore, the undisputed facts establish that CMI was a transferee for value, and as such "all the debtor's rights in the collateral" were transferred to CMI upon sale. N.Y. U.C.C. § 9-617(a)(1) *see also* N.Y. U.C.C. § 9-610(c)(1) (providing that a secured party may purchase its collateral at a public disposition). On the record before the court, plaintiff cannot establish cognizable direct interest in the property that CMI assigned to Freddie Mac.

Additionally, the court is not aware of any legal authority that imposes any obligations on CMI as assignor, or on Freddie Mac as assignee, with respect to plaintiff in order to merely effectuate the assignment. More generally, plaintiff does not allege that the assignment harmed him in any way and, to the extent he could allege harm, he would seek to assert rights of others to protect his own interests. Plaintiff

therefore lacks constitutional and/or prudential standing to challenge the assignment. *See, e.g., Rajamin v. Deutsche Bank Nat. Tr. Co.*, 757 F.3d 79, 84-92 (2d Cir. 2014) (discussing, and finding without merit, theories of constitutional and prudential standing where borrowers sought to challenge mortgage assignments).

The undisputed material facts therefore establish that plaintiff lacks any interest in the Shares and Lease that would enable him to challenge the assignment of the Shares and Lease from CMI to Freddie Mac. The court need not determine whether injunctive relief might be available to a party seeking to challenge an assignment of property rights because even if it were, plaintiff's lack of standing to challenge the assignment precludes the existence of an "actual controversy," which the Declaratory Judgment Act requires as a predicate for declaratory relief. 28 U.S.C. § 2201(a); *see MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-27 (2007) ("[T]he phrase 'case of actual controversy' in the [Declaratory Judgment] Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III [of the United States Constitution]." (citation omitted)); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, (1992) ("[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." (citation omitted)). Plaintiff's lack of standing

also precludes him from establishing any entitlement to injunctive relief.

Therefore, the court grants summary judgment to defendants with respect to plaintiff's claim for declaratory judgment that the transfer of the Shares and Lease from CMI to Freddie Mac is invalid and vacated.

**B.  Validity of 30-Day Notice**

Plaintiff's second "cause of action" seeks declaratory judgment that the 30-Day Notice served on him on August 31, 2015 is "invalid in its entirety and that the September 30, 2015 termination deadline set forth in the [n]otice is tolled and vacated." (Compl. at ¶ 41.) The 30-Day Notice itself indicates that it is a notice pursuant to New York Real Property Law § 228, which governs the termination of tenancies at will or by sufferance. (*See* Group Decl. Ex. K at 2 (stating that Freddie Mac is "the owner entitled to possession [of the Unit] pursuant to N.Y. Real Property Law § 228").) Freddie Mac apparently treated plaintiff's possession of the Unit as a tenancy at will or by sufferance.

As an initial matter, Freddie Mac's treatment of plaintiff as a tenant at sufferance was appropriate. As discussed above, on the undisputed record before the court, no reasonable finder of fact could conclude that any interest plaintiff may have had in the Shares and Lease survived the

foreclosure sale.  Further, Plaintiff does not allege that,

following the foreclosure sale, he had a sublease or any other

arrangement with CMI or Freddie Mac that would give rise to a

leasehold or other interest in the Unit.  Therefore, if

plaintiff remained in possession the Unit, his interest was at

most that of a tenant at will or at sufferance.  *See, e.g.,*

*Fisher v. Queens Park Realty Corp.*, 339 N.Y.S.2d 642, 645 (N.Y.

App. Div. 1973) ("[A] tenant in possession under an invalid

lease is a tenant at will and is entitled to the notice required

by section 228 of the Real Property Law before he can be

removed." (citation omitted)); *Mastas v. Extra Closet, Inc.*, 553

N.Y.S.2d 582, 583 (N.Y. Civ. Ct. 1990) ("The common-law

characterization of a person coming to an estate by the act of a

party and then holding over is that of a tenant at sufferance.

This includes a sublessee holding over after the expiration of

the lessor's term." (internal quotation marks, citations, and

alterations omitted)); *cf. also Boyar v. Goodman*, 609 N.Y.S.2d

279, 280 (N.Y. App. Div. 1994) (concluding that, upon death of

life tenant, life tenant's lessee became tenant at sufferance

because his lease and right to possession terminated); *but cf.*

*Drost v. Hookey*, 881 N.Y.S.2d 839, 840-44 (N.Y. Dist. Ct. 2009)

(concluding property owner's co-habiting girlfriend was a

licensee only entitled to a 10-day notice to quit because, in

part, her permission to use the property did not include

exclusive dominion and control over a specifically identified part of the premises).

Under the New York Real Property Law, "[a] tenancy at will or by sufferance, however created, may be terminated by a written notice of not less than thirty days given in behalf of the landlord, to the tenant, requiring him to remove from the premises." N.Y. Real Prop. Law § 228. The notice must be delivered to the tenant or to a resident of the premises of suitable age and discretion, or "affix[ed] to a conspicuous part of the premises, where it may be conveniently read." *Id.*

Here, the undisputed record includes a copy of the 30-Day Notice, which was executed by Mark Antos, Esq., who was identified as an affiliate of Rosicki, Rosicki & Associates P.C. and as "Attorney-in-Fact for [Freddie Mac]." (Group Decl. Ex. K at 2.) The notice was directed to plaintiff, Ms. Rapillo, and any "John Doe(s)" or "Jane Doe(s)" occupying the Unit , identified Freddie Mac as "the owner entitled to possession [of the Unit] pursuant to N.Y. Real Property Law § 228," and stated that Freddie Mac "hereby elects to terminate as of September 30, 2015, your tenancy of the premises." (Group Decl. Ex. K at 2.)

The record also includes eight affidavits of service, which establish that on August 31, 2015, a licensed process server served the 30-Day Notice and certain attachments on plaintiff, Ms. Rapillo, and any unidentified parties occupying

30

the Unit "by affixing a true copy to each door of [the Unit]," and by mailing it via Certified and First Class Mail. (Group Decl. Ex. K at 3-10.)  The affidavits of service also indicate that the attachments to the 30-Day Notice included an original attorney-certified copy of the Certificate of Sale and Fact, a Notice of Sale, an Affidavit of Publication, an original attorney certified copy of the Assignment of Bid, and a copy of a Limited Power of Attorney. (Group Decl. Ex. K at 3-10.) Although these attachments are not included in the same exhibit as the 30-Day Notice and the affidavits, three that are critical to assessing the validity of the 30-Day Notice are included in other exhibits before the court: the Certificate of Sale and Fact, (Freymuth Decl. Ex. G), the Assignment of Bid, (Freymuth Decl. Ex. H), and the Limited Power of Attorney. (Group Decl. Ex. J.)

As discussed above, the Certificate of Sale and Fact indicates that the auction sale of the Shares and Lease took place, that CMI placed the winning bid, and that no cash changed hands because CMI was the secured creditor. (Freymuth Decl. Ex. G at 2.)  The Assignment of Bid indicates that CMI transferred its interest in the Shares and Lease to Freddie Mac as of July 6, 2015. (Freymuth Decl. Ex. H at 2.)  Finally, the Limited Power of Attorney executed by an officer of Freddie Mac in

Freddie Mac's name expressly authorizes Rosicki, Rosicki, & Associates, P.C., among others, to

> perform, through [its] licensed attorneys . . . on behalf of Freddie Mac . . . any and all lawful acts . . . in connection with the foreclosure . . ., eviction, sale and disposition of real property and shares in cooperative housing corporations located within the State of New York held or owned by Freddie Mac.

(Group Decl. Ex. J at 3-4.)

Additionally, the nonexclusive list of acts that the Limited Power of Attorney authorizes to be undertaken on Freddie Mac's behalf includes "execut[ing], endors[ing], acknowledg[ing] and hav[ing] served any and all notices of any kind associated with the foreclosure, recovery, eviction, and sale of . . . cooperative interests." (*Id.* at 4.)

Taken together, the affidavits of service, the 30-Day Notice, and the attached documents establish that the 30-Day Notice was served on all required parties in full satisfaction of New York Real Property Law § 228. Specifically, the Certificate of Sale and Fact and Assignment of Bid establish that Freddie Mac was the landlord with respect to plaintiff,[11]

---

[11] Because Freddie Mac was the landlord *with respect to plaintiff*, it is irrelevant that an agent of the Linwood Village, Sec. E Cooperative Corp. did not sign the termination notice. Although the cooperative corporation may have been the lessor under the Lease, the foreclosure sale extinguished plaintiff's rights as lessee under the Lease, and CMI acceded to those rights and transferred them to Freddie Mac. *Cf., e.g., ARSR Sols., LLC v. 304 E. 52nd St. Hous. Corp.*, 48 N.Y.S.3d 510, 511 (N.Y. App. Div. 2017) (affirming lower court determination that cooperative housing corporation must recognize plaintiff's ownership of shares and issue lease where plaintiff's predecessor conducted foreclosure sale as to shares and purchased them at the sale).

and the Limited Power of Attorney establishes that the attorneys of Rosicki, Rosicki & Associates, P.C. were authorized to act on Freddie Mac's behalf, in each case with respect to the Unit. The 30-Day Notice itself states that it was sent on behalf of Freddie Mac, and that the tenancies of plaintiff, Ms. Rapillo, and any other persons in possession of the Unit would be terminated effective September 30, 2015.  The affidavits of service establish that the 30-Day Notice was served on plaintiff, Ms. Rapillo, and any others in possession of the Unit, in relevant part, by posting it on each door of the Unit. The 30-Day Notice was therefore "affix[ed] to a conspicuous part of the premises" where plaintiff and any other occupant could easily read it.  The affidavits of service also establish that the 30-Day Notice was served 30 days before September 30, 2015. Consequently, all requirements of New York Real Property Law § 228 were satisfied, and plaintiff's tenancy, as well as that of any other who may have had possession of the Unit at the time, was terminated as of September 30, 2015.

Accordingly, plaintiff's contention that the 30-Day Notice was improper because it was "not signed by an agent of the proprietary lessor of the [Unit] with an indication of the agent's power," (Compl. at ¶ 39), is unfounded, as the undisputed material facts establish that Freddie Mac was the landlord, the attorneys of Rosicki, Rosicki & Associates P.C.

were its agents, proof of agency was served together with the
30-Day Notice, and the 30-Day Notice clearly indicated that it
was sent on behalf of Freddie Mac. *See* N.Y. Real Prop. Law §
228 (requiring that notice be "given *in behalf of* the landlord"
(emphasis added)); *compare Siegel v. Kentucky Fried Chicken of
Long Island, Inc.*, 492 N.E.2d 390, 391 (N.Y. 1986) (affirming
lower court determination that where lease required notice of
cancellation specifically from landlord, notice from agent
without evidence of authority was insufficient) *with Kwong v.
Eng*, 583 N.Y.S.2d 457, 459 (N.Y. App. Div. 1992) ("There is no
written lease between the parties requiring that the demand be
signed by the landlord, as in [*Siegel*]. [The applicable
statute] does not require that the demand be signed by the
landlord. Therefore, the three-day demand notice in the case at
bar was not rendered legally insufficient because it was signed
by the landlords' attorney and not by the landlords.")

Plaintiff's contention that the 30-Day Notice lacked
complete attachments is similarly unfounded because the
Affidavit of Service indicates that the 30-Day Notice was served
together with all attachments necessary to give the notice
force. Similarly, plaintiff's contention that the 30-Day Notice
is invalid because it was not served on Ms. Rapillo's heirs at
law is unfounded because the undisputed Affidavit of Service
indicates it was served on all occupants of the Unit, and as

such was served on all potential "tenants" at will or by sufferance within the meaning of New York Real Property Law § 228 (and, in any event, as discussed above, plaintiff cannot assert the rights of others to protect his own interests). Finally, plaintiff's contention that the 30-Day Notice is invalid because CMI did not properly assign its rights to Freddie Mac is unfounded because, as discussed above, plaintiff lacks standing to challenge the assignment, and even if he did have standing, he does not assert any viable basis for finding the assignment invalid.

Plaintiff, therefore, has no substantive right to a judgment that the 30-Day Notice was invalid, and defendants' motion for summary judgment is granted as to plaintiff's second "cause of action."

### C.   Applicability of N.Y. Real Property Law § 274-a

Plaintiff's third "cause of action" seeks an order directing defendants to provide plaintiff "with an[] immediate payoff statement for the subject loan compliant with [New York Real Property Law] [s]ection 274-a." (Compl. at ¶ 42.) By its own terms, section 274-a of the New York Real Property Law applies to "[t]he holder of a mortgage upon real property." N.Y. Real Prop. Law § 274-a(1). However, when shares in a cooperative housing corporation and the related proprietary lease are pledged as security for a debt, they are treated as

35

personal property and not real property for purposes of enforcing the security interest. *E.g., Fundex Capital Corp.,* 568 N.Y.S.2d at 795; *Bell*, 199 B.R. at 464. Accordingly, the security interest at issue here is not a "mortgage on real property."[12] Even assuming that the court could grant injunctive relief ordering compliance with New York Real Property Law § 274-a in the manner plaintiff seeks, the provision of law is inapplicable here, and defendants are entitled to summary judgment.

## III. Summary

As set forth above, on the undisputed record here, defendant is entitled to summary judgment to the extent plaintiff seeks injunctive relief vacating the foreclosure sale, and to the extent plaintiff seeks declaratory relief as a predicate to unavailable injunctive relief.

---

[12] The court notes that although the New York Court of Appeals has indicated that there may be some "special purposes" where the "real property aspect" of a proprietary lease may predominate, *Shor*, 371 N.E.2d at 524-25, the court is unaware of any precedent indicating that the application of section 274-a is such a "special purpose." Moreover, the commercial reasonableness requirement of New York U.C.C. § 9-610 generally and the notice language set forth in New York U.C.C. § 9-613(a)(4) specifically serve the same interest as New York Real Property Law § 274a: ensuring that the debtor or mortgagor has an opportunity to redeem his collateral. *See Beninati v. FDIC*, 55 F. Supp. 2d 141, 147 (E.D.N.Y. 1999) (stating purpose of commercial reasonableness requirement); *compare* N.Y. U.C.C. § 9-613(a)(4) (stating that notice should advise debtor of his right to, and charge for, an accounting) *with* N.Y. Real Prop. Law § 274-a(1) (requiring that mortgage holder deliver to owner of real property a statement of principal due, interest paid, and itemized account of principal and interest claimed unpaid). Plaintiff's recourse with respect to the alleged failure to offer or provide him an accounting is to proceed with a claim for damages under section 9-625(b) of the New York U.C.C., rather than the relief he seeks in his third "cause of action."

Additionally, defendants are entitled to summary judgment with respect to plaintiff's second "cause of action" which seeks to have the 30-Day Notice invalidated and the termination date tolled and vacated. Defendants are also entitled to summary judgment with respect to plaintiff's third "cause of action," which seeks an order directing defendants to provide plaintiff with a payoff statement under New York Real Property Law § 274-a.

**CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment is granted in its entirety with respect to all of plaintiff's "causes of action."

The Clerk of Court is respectfully directed to enter judgment in favor of defendants, to serve a copy of this order, the judgment, and an appeals packet on plaintiff at his address of record, to note service on the docket, and to close the case.

**SO ORDERED.**

Dated: Brooklyn, New York
      March 5, 2018

                                     /s/
                              **KIYO A. MATSUMOTO**
                              United States District Judge
                              Eastern District of New York